# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**NATHANIEL RICHARDSON**
      **Plaintiff,**

   v.                                           Case No. 07C0834

**R.J. REYNOLDS TOBACCO CO.,**
      **Defendant.**

---

## DECISION AND ORDER

Pro se plaintiff Nathaniel Richardson brought this action against defendant R.J. Reynolds Tobacco Co. in state court, alleging that for thirty years he purchased and smoked cigarettes produced and sold by defendant and that the cigarettes caused him to become sick with emphysema. Defendant removed the case based on diversity of citizenship and now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." Id. In addressing a Rule 12(b)(6) motion, I assume that plaintiff's allegations are true and draw all reasonable inferences flowing from them in the light most favorable to plaintiff. Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir. 1990). In evaluating plaintiff's allegations, I apply Wisconsin substantive law. See Merrill v. Trump Indiana, Inc., 320 F.3d 729, 731 (7th Cir. 2003).

Plaintiff's complaint is bare bones, but he appears to assert a strict liability claim under Wisconsin tort law, i.e., a claim that defendant produced and sold a defective product which harmed him. The elements of a strict liability claim are:

> (1) that the product was in a defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was in when he sold it.

Dippel v. Sciano, 37 Wis. 2d 443, 459 (1967). Taking all inferences in plaintiff's favor, the complaint gives defendant notice of the nature of the claim and the grounds on which it rests. Plaintiff identifies the conduct of which he complains and the harm that it allegedly caused, and at this stage plaintiff need not plead every element of a legal cause of action. Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998). Thus, his complaint appears to be sufficient.

However, defendant argues that federal law regulating tobacco preempts plaintiff's claim. Generally speaking, a federal statute does not preempt a state law claim unless it is "the clear and manifest purpose of Congress" to do so. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Federal preemption may be express or implied. A federal statute may implicitly preempt a state law claim if a conflict arises between the two laws or if the federal law "so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" Cipollone, 505 U.S. at 516 (quoting Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982)). A conflict between federal

2

and state law arises when compliance with both would be impossible or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Fid. Fed. Sav. & Loan Ass'n, 458 U.S. at 152 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).  Defendant argues that federal legislation relating to tobacco products impliedly preempts plaintiff's state law claim because it evinces an intent by Congress to keep cigarettes on the market to serve the national economy.  In other words because Congress chose to regulate but not to ban tobacco products, it intended to continue their manufacture and sale and therefore to preempt state law claims based on such manufacture and sale.

In any preemption case, "the purpose of Congress is the ultimate touchstone." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).  Because states are independent sovereigns in a federal system, I presume that "Congress does not cavalierly pre-empt state-law causes of action." Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005). In areas where states have traditionally regulated, such as the health and safety of their citizens, I assume that "a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." Bates, 544 U.S. at 449 (internal quotations omitted).  I discern Congress's intent from the language of the statute and the statutory framework, including the structure and purpose of the statute as revealed "not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." Id. at 486.

Generally, courts addressing the preemption of state law by federal tobacco legislation primarily have focused on the Federal Cigarette Labeling and Advertising Act

3

("FCLAA"), 15 U.S.C. § 1331 et seq. Congress explained the purpose of the FCLAA as follows:

> It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby--
>
> (1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and
>
> (2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

15 U.S.C. § 1331. The FCLAA also contains a preemption provision stating that "no requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b).

In Cipollone, the Supreme Court addressed the FCLAA's preemptive effect, finding no cause to extend its analysis beyond the scope of the express preemption provision and therefore holding that "matters beyond that reach are not pre-empted."[1] Cipollone, 505 U.S. at 517. The Court stated that in determining the scope of the preemption provision,

---

[1] In later cases, the Court made clear that an express preemption provision does not preclude the application of implied preemption principles; it noted that a decision by Congress to include such a provision supports an inference that implied preemption principles do not apply but does not foreclose their operation. See Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 869 (2000); Freightliner Corp. v. Myrick, 514 U.S. 280, 288 (1995). However, the Cipollone analysis, reaffirmed in Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 551 (2001), remains valid as it relates to the preemptive effect of the FCLAA on state law claims.

4

the central inquiry was "whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion.'" Cipollone, 505 U.S. at 524 (citing 15 U.S.C. § 1334(b)). Applying this test, the Court concluded that while the FCLAA preempts failure-to-warn and other claims related to advertising and promotion, id., it "does not generally preempt state law obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes." Id. at 523 (internal quotations omitted). Thus, the Court found that the FCLAA does not preempt a variety of common law claims against cigarette manufacturers. Based on Cipollone, I conclude that the FCLAA does not preempt plaintiff's state law claim, which does not involve advertising and promotion.

Defendant, however, cites several cases in which courts found claims such as plaintiff's impliedly preempted. See, e.g., Cruz Vargas v. R.J. Reynolds Tobacco Co., 218 F. Supp. 2d 109, 118 (D.P.R. 2002); Insolia v. Philip Morris, Inc., 128 F. Supp. 2d 1220, 1224-25 (W.D. Wis. 2000). The courts in such cases relied in part on the above provision of the FCLAA setting forth the purpose of the act, 15 U.S.C. § 1331, and on another statute, 7 U.S.C. § 1311, which contained language about the importance of tobacco to the economy. However, Congress has since repealed 7 U.S.C. § 1311. And, as discussed, the FCLAA preempts only claims related to advertising and promotion. Additionally, while in the FCLAA, Congress expressed an intent to protect commerce and the economy, it enacted the statute in the context of a potential plethora of state and federal regulations

5

relating to cigarette advertising.[2] Thus, Congress clearly intended to "protect the national economy from the burden imposed by diverse, nonuniform, and confusing cigarette labeling and advertising regulations," Cipollone, 505 U.S. at 514, but did not clearly intend to extend broad immunity from common law liability to cigarette manufacturers.

Defendant also relies on Geier, citing it for the proposition that when Congress sanctions an activity, it impliedly preempts any state law liability for such activity. However, defendant reads Geier too broadly. In Geier, the Supreme Court held that the combination of a federal statute and an implementing regulation, making airbags optional rather than mandatory, preempted a state tort law claim based on the failure to install an airbag. The Geier Court rested its decision on a federal agency's express rejection based on its expertise of an airbag mandate, the agency's extensive explanation of the benefits of a non-mandatory approach and the agency's view that tort claims would interfere with the regulatory scheme. 529 U.S. at 881-83. None of these elements are present in the federal statutory scheme relating to tobacco products. Federal statutes relating to tobacco products contain no language analogous to that found in the regulation concerning airbags nor has any federal agency weighed in on the effect of state law tort claims. Finally, contrary to defendant's assertion, the mere fact that Congress enacts a statute affecting an industry does not in itself reflect an intent to eliminate all state law related to the industry. Hillsborough County, Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 719

---

[2] In response to a 1964 report of the Surgeon General's Advisory Committee discussing the hazard cigarette smoking poses to health, the Federal Trade Commission and several states moved quickly to regulate the advertising and labeling of cigarettes in various ways. See Cipollone, 505 U.S. at 513. Congress enacted the FCLAA in response to these moves to ensure uniformity of advertising and labeling regulations.

(1985). This is so even when Congress intends to provide a measure of protection to an industry. See Commonwealth Edison Co. v. Montana, 453 U.S. 609, 633-34 (1981) (upholding a state law imposing a tax on the production of coal even though Congress, through a federal statute, intended to foster the coal industry); see also Geier, 529 U.S. at 882 (discussing the possible difference in preemption analysis between a tort claim seeking damages and a state law mandating certain behavior).[3]

Defendant's more general contention that by not banning tobacco, Congress manifested an intent to preempt all state law claims relating to the manufacture and sale of tobacco is also unconvincing. First, nothing in the text, structure or purpose of any statute relating to tobacco suggests such an intent. None of the statutes governing tobacco products, the FCLAA, the Public Health Cigarette Smoking Act of 1969, Pub. L. 91-222, 84 Stat. 87, the Comprehensive Smoking Education Act, Pub. L. 98-474, 98 Stat. 2200, and the Comprehensive Smokeless Tobacco Health Education Act of 1986, Pub. L. 99-252, 100 Stat. 30, indicates that Congress intended to wholly insulate the tobacco industry from liability. None of the statutes mentions preemption except as it relates to claims concerning advertising and promotion, see, e.g., 15 U.S.C. §§ 1331 and 4406. The legislative history of the statutes indicates that Congress principally intended to educate the public concerning the health-related dangers of tobacco. Secondarily, it sought to

---

[3] Defendant's argument based on FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120 (2000), is also unpersuasive. In stating that Congress has foreclosed the removal of tobacco products from the market, the Brown & Williamson Court addressed the possibility that a federal agency would ban the sale of cigarettes – foreclosing entirely their availability to the public. As I will discuss, allowing state common law claims is much different than banning cigarettes. Additionally, the Brown & Williamson Court dealt with the jurisdiction of a federal agency, which does not implicate the same federalism concerns as preemption.

7

create uniform rules regarding the regulation of tobacco advertising, to recognize the economic importance of the tobacco industry and to confirm the individual's "right to choose to smoke or not to smoke." See H. Rep. No. 449 (June 8, 1965), as reprinted in 1965 U.S.C.C.A.N. 2350, 2352.

Permitting plaintiffs to bring state law claims against manufacturers of tobacco products for injuries caused by such products does not conflict with these objectives. Claims such as plaintiff's do not interfere with the regulation of advertising and promotion of tobacco. Further, it is highly unlikely that such claims will lead to the destruction of the tobacco industry. Allowing common law claims does no more than place manufacturers of tobacco products in the same position as manufacturers of other legal products with known inherent risks. See Insolia v. Phillip Morris, Inc., 216 F.2d 596, 599 (7th Cir. 2000) (discussing a strict liability claim under Wisconsin law and noting that "[i]f the average consumer would reasonably anticipate the dangerous condition of the product and fully appreciate the attendant risk of injury, it would not be unreasonably dangerous and defective."). State common law only affords a remedy to individuals who can establish that tobacco products rather than their own negligence or disregard of the inherent risks of tobacco caused them to suffer injuries. Cf. Cipollone, 505 U.S. at 512 (noting that at trial, the jury found the plaintiff to have "voluntarily and unreasonably encountered a known danger by smoking cigarettes," and to be eighty percent responsible for her own injuries, therefore, not entitled to damages); see also Sprietsma v. Mercury Marine, 537 U.S. 51, 64 (2002). Finally, the elimination of common law remedies would abrogate all judicial recourse for injured parties – including, for example, individuals injured by second-hand

8

smoke. Congress is unlikely to create such dramatic consequences without discussing or even alluding to them. See Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 251 (1984).

Thus, for the foregoing reasons, I conclude that federal law does not impliedly preempt plaintiff's claim. Defendant's arguments are insufficient to overcome the presumption against preemption and the principle that courts should read a federal statute as preempting state law only if Congress clearly indicates an intention to do so. Although plaintiff will likely have difficulty establishing his claim, see Insolia, 216 F.3d at 600-603, his complaint survives defendant's Rule 12(b)(6) motion.

**THEREFORE, IT IS ORDERED** that defendant's motion to dismiss for failure to state a claim is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion to dismiss for failure to prosecute is **DENIED.**[4]

Dated at Milwaukee, Wisconsin this 26 day of September, 2008.

/s
LYNN ADELMAN
District Judge

---

[4]Plaintiff initially failed to respond to defendant's Rule 12(b)(6) motion but subsequently did so and stated that he wished to proceed with his case.

9